318 Ga. 361
FINAL COPY

S23G0405. VANTAGE CANCER CENTERS of GEORGIA, LLC et al. v. DEPARTMENT OF COMMUNITY HEALTH et al.
S23G0408. NORTHEAST GEORGIA MEDICAL CENTER, INC. et al. v. NORTHSIDE HOSPITAL, INC.
S23G0409. NORTHEAST GEORGIA MEDICAL CENTER, INC. et al. v. DEPARTMENT OF COMMUNITY HEALTH.

BOGGS, Chief Justice.

This case concerns the standard of review that the Commissioner of the Georgia Department of Community Health must apply when reviewing the decision of a hearing officer on an application for a certificate of need to establish a new health service. The Court of Appeals held that in this case the Commissioner applied the correct standard of review, see *Northside Hosp. v. Northeast Ga. Med. Center*, 365 Ga. App. 778, 782-785 (880 SE2d 286) (2022), and we granted certiorari to review that decision. We now vacate the Court of Appeals' judgment, set forth the standard applicable to the Commissioner's review, and remand the case to the Court of Appeals.

1. In 2020, Northside Hospital, Inc. d/b/a Northside Hospital Gwinnett ("Northside") applied to the Georgia Department of Community Health ("the Department") for a certificate of need ("CON") to establish a new radiation therapy service at the Northside Gwinnett Hospital. Northside filed its application under a Department regulation permitting need exceptions for atypical barriers to care, asserting that atypical barriers impeded the delivery of radiation therapy services to inpatients at Northside Gwinnett.[1] More specifically, Northside contended that its inpatient cancer patients had to be transported offsite for radiation therapy and that, as a result, its inpatients experienced negative quality issues, such as missed appointments and delayed treatment. The

---

[1] Ga. Comp. R. & Regs., r. 111-2-2-.42 sets forth the requirements for a CON to establish a new radiation therapy service. Among other things, an applicant must either show a need for the service, see Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (a), or establish grounds for applying an exception to the usual need requirement. See Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (b). The atypical barrier exception to the need standard permits the Department to issue a certificate "[t]o remedy an atypical barrier to [radiation therapy] services based on cost, quality, financial access and geographic accessibility." Ga. Comp. R. & Regs., r. 111-2-2-.42 (3) (b) (4).

Northeast Georgia Medical Center ("Northeast"), RCOG Cancer Centers, LLC ("RCOG"), and Vantage Cancer Centers of Georgia, LLC ("Vantage"), opposed the application. Northeast provides radiation therapy service at three locations in Hall County, one of which is just across the Gwinnett County line. Northeast provides radiation therapy to numerous Gwinnett County residents. Vantage and RCOG provide radiation therapy at facilities in Gwinnett County that are about 0.3 miles and 0.8 miles from Northside, respectively.[2] The Department's staff granted the CON on June 16, 2020, concluding, among other things, that Northside had justified an exception to the numerical need methodology based on quality of care. See OCGA § 31-6-43 (b) (providing that Department staff makes an initial decision to grant or deny a CON).

(a) *Appeal to Hearing Officer*

---

[2] See OCGA § 31-6-43 (d) (2) (A) (allowing certain parties to "oppose an application for a certificate of need for a proposed project," including parties who "offer[ ] substantially similar services as proposed within a 35 mile radius of the proposed project").

Northeast, RCOG, and Vantage filed administrative appeals to a hearing officer. See OCGA § 31-6-44 (d). The hearing officers are part of a "Certificate of Need Appeal Panel" that is "an agency separate and apart from the department," the purpose of which is "to serve as a panel of independent hearing officers to review the department's initial decision to grant or deny a certificate of need application." OCGA § 31-6-44 (a). The hearing officer conducts "a de novo review of the decision of the department." OCGA § 31-6-44 (f).

Here, on April 21, 2021, following a hearing, the hearing officer reversed the Department's decision approving the CON. The hearing officer's decision contained 86 paragraphs designated as "Findings of Fact" ("FOF"). FOF 29, for example, stated that "the evidence at [the] hearing did not support the proposition that there is any atypical quality barrier to care associated with a hospital's inpatients receiving radiation therapy at a nearby freestanding center, as they have for decades." FOF 34 stated that "[t]here is nothing atypical about a hospital such as [Northside] utilizing nearby freestanding [radiation therapy] providers staffed by

4

physicians on the hospital's medical staff to treat its inpatients, and that situation does not constitute an atypical barrier to care"; that "[t]his is consistent with the overwhelmingly-outpatient nature of the service, and medical transport to nearby radiation therapy centers offers good access and quality for those few patients who would benefit from radiation while admitted"; and that "[t]he available data presented at the hearing further indicated that inpatients at [Northside] are not accessing radiation at lower rates, thus confirming that inpatients at [Northside] have good access, and relying upon a detached nearby facility does not pose a barrier to care." Meanwhile, FOF 37 stated that the "[m]edical transport of cancer inpatients for radiation therapy is routine, safe, and effective" and "has been the practice at [Northside] for many years."

(b) *Appeal to the Commissioner*

Northside and the Department appealed the hearing officer's decision to the Commissioner of the Department. See OCGA § 31-6-44 (i) (permitting parties, including the Department, to appeal the

5

hearing officer's decision to the commissioner). The Commissioner's

scope of review is defined by OCGA § 31-6-44 (k) (1), which provides:

> In the event an appeal of the hearing officer's decision is filed, the commissioner may adopt the hearing officer's order as the final order of the department or the commissioner may reject or modify the conclusions of law over which the department has substantive jurisdiction and the interpretation of administrative rules over which it has substantive jurisdiction. By rejecting or modifying such conclusion of law or interpretation of administrative rule, the department must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified. Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact. The commissioner may not reject or modify the findings of fact unless the commissioner first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon any competent substantial evidence or that the proceedings on which the findings were based did not comply with the essential requirements of law.

Here, in conducting this review, the Commissioner quoted the

standard of review set forth in OCGA § 31-6-44 (k) (1), overturned

the hearing officer's decision, and granted a CON for the project. The

6

Commissioner rejected many of the FOFs of the hearing officer on the grounds that they were "conclusion[s] couched as a finding of fact," "irrelevant," or "contain[ed] opinions." The Commissioner concluded, among other things, that

> [Northside] defined a population in need of the service it is proposing. The gap, from a quality perspective, is the service is not now available on site at its existing facility and inpatients requiring such treatments must be transported to nearby free-standing outpatient facilities for radiation therapy. The balancing of the needs of the patients, their comfort, their medical fragility, the costs to transfer them for a regimen of radiation treatments, and the involvement of clinical staff to transport the patient relates directly to quality.

The Commissioner thus determined that Northside had justified "an atypical barrier based on quality to inpatient [radiation therapy] services for the population it serves."

(c) *Judicial Review in Superior Court*

Vantage and RCOG filed a petition for judicial review in Gwinnett County Superior Court, and Northeast sought review in

7

Hall County Superior Court.[3] See OCGA § 31-6-44.1 (a). Under

OCGA § 31-6-44.1 (a), a superior court is authorized to reverse or

modify the Commissioner's final decision only if "substantial rights

of the appellant have been prejudiced because the procedures

followed by the department, the hearing officer, or the commissioner

or the administrative findings, inferences, and conclusions

contained in the final decision are," among other things, "[i]n

violation of constitutional or statutory provisions," "[i]n excess of the

statutory authority of the department," or

> [n]ot supported by substantial evidence, which shall
> mean that the record does not contain such relevant
> evidence as a reasonable mind might accept as adequate
> to support such findings, inferences, conclusions, or
> decisions, which such evidentiary standard shall be in
> excess of the "any evidence" standard contained in other
> statutory provisions[.]

---

[3] The petitions for judicial review were filed in the superior courts of different counties because OCGA § 31-6-44.1 (a) provides that a party "may seek judicial review of the final decision in accordance with the method set forth in Chapter 13 of Title 50" and because OCGA § 50-13-19 (b) provides that an interested party may file a petition for judicial review in Fulton County or, if the petitioner is a corporation, "in the superior court of the county where the petitioner maintains its principal place of doing business in this state[.]"

OCGA § 31-6-44.1 (a) (1), (2), (5). Here, Northeast, Vantage, and RCOG contended, among other things, that the Commissioner violated the statutory standard of OCGA § 31-6-44 (k) (1) for reviewing the findings of fact of the hearing officer and that the Commissioner's decision was not supported by substantial evidence. The Gwinnett County court upheld the Commissioner's decision, concluding that the decision was supported by substantial evidence and was consistent with the atypical barrier exception and that, even if the Commissioner erred in failing to follow the standard of review of OCGA § 31-6-44 (k) (1), Vantage and RCOG had failed to show that the failure violated their substantial rights. On the other hand, the Hall County court reversed the Commissioner's decision, concluding, among other things, that the Commissioner exceeded the limits of his statutory authority under OCGA § 31-6-44 (k) (1) by rejecting and modifying findings of fact without concluding that the findings were "'not based upon any competent substantial evidence.'" The Hall County court concluded that Northeast's substantial rights were prejudiced by this error.

9

(d) *Court of Appeals Decision*

In the Gwinnett County case, Vantage and RCOG filed a joint application for discretionary appeal in the Court of Appeals. In the Hall County case, Northside and the Department filed separate applications for discretionary appeal. The Court of Appeals granted all three applications. In the Northside and the Department appeals, the Court of Appeals reversed the judgment of the Superior Court of Hall County. See *Northside Hosp.*, 365 Ga. App. at 783-784. The Court of Appeals concluded that the Hall County court "conflated the commissioner's scope of review with that of its own," id. at 783, when the trial court stated:

> Like reviewing courts, the commissioner is not authorized under *the substantial evidence standard* to reweigh the evidence, perform a de novo review of the facts, substitute his judgment for that of the hearing officer as to the proper weight to give evidence, or make his own factual findings.

Id. (emphasis in original). The Court of Appeals concluded that this language indicated that the trial court "ignored the plain language of OCGA § 31-6-44 (k) (1), which commands the commissioner to

review the entire record and to evaluate whether the hearing officer's findings of fact were supported — not only by substantial evidence, as is required of the superior court — but by *competent* substantial evidence." Id. (emphasis in original). The Court of Appeals reasoned that, unlike the limited authority granted to superior courts on judicial review, the use of the word "competent" "requires the commissioner to apply an additional layer of qualitative inquiry" and that "[t]his higher inquiry comports with [the Department's] codified policy-making directive." Id. at 784. The Court of Appeals thus essentially concluded that the Commissioner, in reviewing the hearing officer's decision under OCGA § 31-6-44 (k) (1), was not prohibited from reweighing the evidence that was presented to the hearing officer like a superior court is constrained by OCGA § 31-6-44.1 (a) (5) in reviewing whether the Commissioner's decision is supported by substantial evidence.

In addition, the Court of Appeals concluded that the Commissioner did "*state with particularity* his reasons for rejecting or modifying each finding of fact" in that he rejected them "as

11

conclusory, speculative, or mere opinion," *Northside Hosp.*, 365 Ga. App. at 785 (emphasis in original), and that the "clear inference" was that "the Commissioner viewed [the hearing officer's] findings — to the extent they *are* factual findings — as also unsupported by competent substantial evidence," thus substantially complying with OCGA § 31-6-44 (k) (1). Id. (emphasis in original). In reaching this conclusion, however, the Court of Appeals majority opinion did not undertake to determine the meaning of the requirement that the Commissioner "state with particularity" his reasons for concluding that the hearing officer's findings of fact were not supported by "competent substantial evidence."

In Vantage's appeal from the Gwinnett County court, the Court of Appeals affirmed on the ground that it had determined in the appeals by Northside and the Department that the Commissioner's decision was proper. *Northside Hosp.*, 365 Ga. App. at 788.

Presiding Judge Dillard dissented in both cases on the ground that "the commissioner repeatedly violated the unambiguous requirements and prohibitions delineated in OCGA § 31-6-44 (k)

12

(1)." *Northside Hosp.*, 365 Ga. App. at 788. He explained that "the commissioner never used the words 'competent,' 'substantial,' *or even 'evidence'* in applying OCGA § 31-6-44 (k) (1)"; that "the commissioner . . . needs to establish which specific standard of evidentiary review he applied and do so with particularity"; that "not only did the commissioner fail to apply the competent substantial evidence standard of OCGA § 31-6-44 (k) (1), he instead gave a laundry list of statutorily prohibited reasons for rejecting or modifying the hearing officer's findings of fact"; and that "[t]he trial court's judgments . . . should be vacated and the cases remanded with instructions to vacate the [Department's] final decision and instruct the commissioner to issue a new decision." Id. at 792-794 (emphasis in original).

RCOG and Vantage filed a timely petition for certiorari, which we granted. Northeast filed two companion petitions for certiorari, and we granted both. We granted the petitions to address the meaning of the standard of review that OCGA § 31-6-44 (k) (1)

requires the Commissioner to apply in reviewing the hearing officer's findings of fact.

2. As explained below, we conclude that the Court of Appeals erred in determining the meaning of the phrase "competent substantial evidence" in OCGA § 31-6-44 (k) (1). Moreover, we undertake to define the meaning of the requirement that the Commissioner must "state with particularity" his reasons for rejecting or modifying a finding of fact of the hearing officer. Because we conclude that the Court of Appeals should determine in the first instance whether the Commissioner complied with the standard of review of OCGA § 31-6-44 (k) (1), as that standard is applied properly, we vacate and remand the case to it for proceedings consistent with this opinion.

"When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant." *Camp v. Williams*, 314 Ga. 699, 702 (879 SE2d 88) (2022) (cleaned up). "To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the

14

context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *McBrayer v. Scarbrough*, 317 Ga. 387, 393 (893 SE2d 660) (2023) (cleaned up). Of course, "as we have said many times before when interpreting legal text, we do not read words in isolation, but rather in context." *Seals v. State*, 311 Ga. 739, 740 (860 SE2d 419) (2021) (cleaned up), disapproved on other grounds by *Gonzales v. State*, 315 Ga. 661, 665 n.7 (884 SE2d 339) (2023). "For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." *Zaldivar v. Prickett*, 297 Ga. 589, 591 (774 SE2d 688) (2015) (cleaned up).

The text of OCGA § 31-6-44 (k) (1) requires the Commissioner to accept the hearing officer's findings of fact "unless the commissioner first determines from a review of the entire record, and states with particularity in the order, that the findings of fact

15

were not based upon any competent substantial evidence." Several interpretive issues are presented by this language. One is the meaning of "competent substantial evidence," and another is the meaning of the requirement that the Commissioner "state[ ] with particularity in the order" why the Commissioner is rejecting or modifying a finding of fact.

(a) We turn first to the phrase "competent substantial evidence." We note that the term is not defined by the laws governing the certificate of need program, see OCGA § 31-6-40 et seq., and has not been interpreted by the courts of this State. However, the phrase "substantial evidence" is defined in another provision of the act governing the certificate of need program, OCGA § 31-6-44.1 (a) (5), Northside contends that that definition is controlling, and "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning." *Zaldivar*, 297 Ga. at 592 (cleaned up). In this regard, OCGA § 31-6-44.1 (a) (5), which sets forth the standard for a

16

superior court's review of the Department's final decision, provides that a superior court

> may reverse or modify the final decision only if . . . the administrative findings, inferences, and conclusions contained in the final decision are . . . [n]ot supported by substantial evidence, which shall mean that the record does not contain such relevant evidence as a reasonable mind might accept as adequate to support such findings, inferences, conclusions, or decisions, which such evidentiary standard shall be in excess of the "any evidence" standard contained in other statutory provisions[.]

We note that this definition of "substantial evidence" is consistent with the meaning of the term as used in a legal context. See Black's Law Dictionary 599 (8th ed. 2004) ("substantial evidence" means "[e]vidence that a reasonable mind could accept as adequate to support a conclusion; evidence beyond a scintilla"). See *Zaldivar*, 297 Ga. at 596 (looking to Black's Law Dictionary for "the usual and customary meaning of [a] term as used in a legal context"). Cf. *Biestek v. Berryhill*, 587 U.S. ___ (139 SCt 1148, 1154, 1156, 203 LE2d 504) (2019) (explaining that "the phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how

17

courts are to review agency factfinding"; that it means reviewing the administrative record for "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"; that the standard is a "deferential" one; and that the threshold for such evidentiary sufficiency is not high, but is "more than a mere scintilla" (cleaned up)). Moreover, in two cases involving the predecessors to OCGA § 31-6-44.1 (a) (5) (former OCGA §§ 31-6-44 (m) (5) (1999) and 31-6-44 (i) (5) (1990)) and involving the exact same definition of "substantial evidence," the Court of Appeals held that the standard was a deferential one that did not permit a reviewing court to reweigh findings of fact. See *Dept. of Community Health v. Gwinnett Hosp. System*, 262 Ga. App. 879, 883 (586 SE2d 762) (2003); *Hosp. Auth. of Gwinnett County v. State Health Planning Agency*, 211 Ga. App. 407, 409-410 (438 SE2d 912) (1993).

Given that the term "substantial evidence" is defined in another provision of our certificate-of-need laws and that the definition tracks the commonly understood meaning of that standard in the legal context, we conclude that the phrase

18

"substantial evidence" in OCGA § 31-6-44 (k) (1), has the meaning given to that term by OCGA § 31-6-44.1 (a) (5).[4] See *Zaldivar*, 297 Ga. at 592.

(b) Resolving the meaning of "substantial evidence" in OCGA § 31-6-44 (k) (1), however, does not end our inquiry, because the

---

[4] Presiding Justice Peterson recently noted that a petition for certiorari "persuasively suggest[ed]" that this Court and the Court of Appeals "may have gone astray" by on occasion interpreting the phrase "substantial evidence" in Georgia statutes governing review of administrative agency decisions "to mean essentially 'any evidence.'" *Florida Rock Indus. v. Clayton County Bd. of Commrs.*, 316 Ga. 380, 381-382 (888 SE2d 573) (2023) (Peterson, P. J., concurring in the denial of certiorari). He explained that

> it appears that the phrase "substantial evidence" had an identifiable, stable meaning in the law by the time many of our state's review provisions were enacted. See, e.g., *Consol. Edison Co. v. Nat. Labor Relations Bd.*, 305 U.S. 197, 229 (59 SCt 206, 83 LE 126) (1938) ("Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") . . . . And that meaning . . . apparently referred to something more than literally any evidence. See *Universal Camera Corp. v. Nat. Labor Relations Bd.*, 340 U.S. 474, 477 (71 SCt 456, 95 LE 456) (1951) ("substantial evidence is more than a mere scintilla . . . it must do more than create a suspicion of the existence of the fact to be established").

*Florida Rock*, 316 Ga. at 381-382 (cleaned up). Despite his reservations about prior case law interpreting the "substantial evidence" standard of review as "any evidence," Presiding Justice Peterson concurred in the denial of certiorari because the statute at issue in that petition would no longer be in force by the time we could have decided the case. Id. at 382. Here, we need not address those cases because the General Assembly has defined the phrase "substantial evidence" in the context of cases involving certificates of need.

applicable standard in paragraph (k) (1) is "competent substantial evidence." See *State v. SASS Group*, 315 Ga. 893, 902 (885 SE2d 761) (2023) (explaining that "courts generally should avoid a construction that makes some language mere surplusage" (cleaned up)). Northside and the Department contend that the use of the word "competent" in OCGA § 31-6-44 (k) (1) signifies that the General Assembly intended for the addition of "competent" in the "substantial evidence" component of OCGA § 31-6-44 (k) (1) to give the Commissioner greater power in reviewing the hearing officer's findings of fact than that of "substantial evidence" as defined in OCGA § 31-6-44.1 (a) (5). More specifically, Northside argues that the word "competent" permits the Commissioner to consider the proper weight to be given to evidence introduced before the hearing officer, to permit the Commissioner to review the evidence in light of his expertise, and to review the evidence before the hearing officer for reliability. In the same vein, the Court of Appeals concluded that use of the phrase "competent substantial evidence" permitted the Commissioner "to apply an additional layer of qualitative inquiry"

20

to the review permitted by the "substantial evidence" prong of OCGA § 31-6-44.1 (a) (5). *Northside Hosp.*, 365 Ga. App. at 783-784. The Court of Appeals also suggested that the word "competent" permits the Commissioner to consider policy concerns in reviewing the hearing officer's findings of fact. Id. at 784 (noting that "additional layer of qualitative inquiry" "comports with [the Department's] codified policy-making directive").

We disagree that "competent substantial evidence" carries such meanings. In determining the meaning of "competent substantial evidence," we may look to other statutory law that "forms the legal background of the statutory provision in question." *Zaldivar*, 297 Ga. at 591 (cleaned up). At the time of the enactment of OCGA § 31-6-44 (k) (1) in 2008, former OCGA § 24-1-1 (1) provided that "[c]ompetent evidence is that which is admissible." See also *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864) (1978) (citing to former version of OCGA § 24-1-1 (1) for the proposition that "[c]ompetent evidence is that which is admissible"). This definition, in fact, has existed since Georgia's first

Code in 1863. See Code of 1863, § 3671 ("Competent evidence is that which is admissible"); Code of 1933, § 38-102 (same). This legal background is relevant context for understanding the meaning of "competent substantial evidence." See *Zaldivar*, 297 Ga. at 591. See also Black's Law Dictionary 596 (8th ed. 2004) (defining "competent evidence" as "admissible evidence" and "relevant evidence"). Accord *Undisclosed LLC v. State*, 302 Ga. 418, 428-430 (807 SE2d 393) (2017) (in determining the meaning of court rules, which are interpreted in the same way as statutes, we looked to a statute as it existed at the time the court rule was adopted for relevant context).[5] Given the longstanding definition of "competent evidence" in our statutory law at the time OCGA § 31-6-44 (k) (1) was enacted, we conclude that "competent" in the phrase "competent substantial evidence" is most naturally and reasonably understood to mean substantial evidence that was admissible.

---

[5] We note that the provision of the old Evidence Code defining "competent evidence" was repealed in 2013 by our current Evidence Code. See Ga. L. 2011, pp. 99, 100. That repeal had no effect on the meaning OCGA § 31-6-44 (k) (1) had when it was enacted years earlier.

Northside, however, asserts several arguments against this reading of "competent substantial evidence." Northside notes that a reviewing court is authorized to reject factual findings when they are not supported by "substantial evidence," OCGA § 31-6-44.1 (a) (5), and correctly notes that the word "competent" is not included in that standard of review. It argues that a superior court could not reverse a final decision of the agency for errors relating to the admissibility of evidence under the "substantial evidence" review authorized by OCGA § 31-6-44.1 (a) (5) if "competent" evidence equals admissible evidence, because then "substantial evidence" would not encompass admissibility determinations. Lack of "substantial evidence," however, is not the only basis for judicial review. See OCGA § 31-6-44.1 (a) (3) and (4) (authorizing judicial review, respectively, when final decisions are "[m]ade upon unlawful procedures" and "[a]ffected by other error of law"). Those grounds for judicial review are broad enough to permit a court to consider whether the final decision of an agency rested upon inadmissible evidence. See, e.g., *Jackson Elec. Membership Corp. v. Ga. Pub. Svc.*

23

*Comm.*, 294 Ga. App. 253, 260 (668 SE2d 867) (2008) (noting standard of review of agency decision regarding competency or relevancy of evidence in administrative proceedings under APA); *Ga. Real Estate Comm. v. Peavy*, 229 Ga. App. 201, 201, 204 (493 SE2d 602) (1997) (reviewing a superior court's reversal of a final agency decision under OCGA § 50-13-19 (h), which mirrors OCGA § 31-6-44.1 (a), for an error regarding the admissibility of evidence).

Northside further contends that "competent substantial evidence" could not mean admissible evidence because the rules of evidence do not strictly apply in administrative proceedings. However, OCGA § 31-6-44 (e) provides that, with exceptions not applicable here, "the hearing officer shall act, and the hearing shall be conducted as a full evidentiary hearing, in accordance with Chapter 13 of Title 50, the 'Georgia Administrative Procedure Act,' relating to contested cases." OCGA § 50-13-15 governs evidentiary issues in contested cases under the APA. Among other things, that statute says:

Irrelevant, immaterial, or unduly repetitious evidence shall be excluded. The rules of evidence as applied in the trial of civil nonjury cases in the superior courts shall be followed. *When necessary to ascertain facts not reasonably susceptible of proof under such rules, evidence not admissible thereunder may be admitted, except where precluded by statute, if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs or if it consists of a report of medical, psychiatric, or psychological evaluation of a type routinely submitted to and relied upon by an agency in the normal course of its business.* Agencies shall give effect to the rules of privilege recognized by law.

OCGA § 50-13-15 (1) (emphasis supplied). The italicized language indicates that there is a limited exception to the application of the rules of evidence to contested hearings, but the rules of evidence as applied in "civil nonjury cases" otherwise apply and "[i]rrelevant, immaterial, or unduly repetitious evidence shall be excluded." Id. Thus, contrary to Northside's contention, the notion of admissible evidence does have meaning in administrative proceedings.

Next, Northside correctly notes that OCGA § 50-13-15 (4) says that, in contested cases, "[t]he agency's experience, technical competence, and specialized knowledge may be utilized in the

evaluation of the evidence" and argues that the phrase "competent substantial evidence" should be read to permit the Commissioner in CON cases to use his experience and specialized knowledge to judge the weight of the evidence heard by the hearing officer. Northside essentially argues that the Commissioner should be able to review the evidence that was presented to the hearing officer de novo to the extent the Commissioner's specialized knowledge is applicable.

However, under the CON statute, when a case is contested, it is the hearing officer, rather than the agency, that is tasked with evaluating the evidence. OCGA § 31-6-44 (e) says that the hearing before the hearing officer "shall be conducted as a full evidentiary hearing, in accordance with [the APA], relating to contested cases, except as otherwise specified in this Code section." In contested CON cases, after the Department's staff makes its initial decision, see OCGA § 31-6-43 (b), the hearing officer conducts the full evidentiary hearing de novo, see OCGA § 31-6-44 (f), and OCGA § 31-6-44 (a) provides that the purpose of a panel of hearing officers "shall be to serve as a panel of independent hearing officers to review the

26

department's initial decision to grant or deny a certificate of need application." After the evidentiary hearing, the hearing officer, not the Commissioner, evaluates the evidence and "make[s] written findings of fact and conclusions of law." OCGA § 31-6-44 (i). Because the Commissioner plays no role in the evidentiary hearing under OCGA § 31-6-44, the provision of OCGA § 50-13-15 (4) that permits an agency that is conducting a hearing to evaluate the evidence presented at that hearing based on its expertise does not apply to contested CON hearings.

Moreover, to the extent that the Commissioner is arguing that OCGA § 50-13-15 (4) should be incorporated into his review of the hearing officer's decision under OCGA § 31-6-44 (k) (1), the argument has no merit. To begin, there is nothing in the limited power of review granted to the Commissioner by OCGA § 31-6-44 (k) (1) that permits the Commissioner to independently evaluate the evidence before the hearing officer based on his expertise. In contrast, the General Assembly granted agencies broader powers to review the initial decisions of one of their own agency

27

representatives under the APA. In this regard, OCGA § 50-13-17 (a) provides that, when an agency is reviewing an initial decision of an agency representative in a contested case, the agency "shall have all the powers it would have in making the initial decision," which would include the power to evaluate the evidence based on its specialized knowledge, as authorized by OCGA § 50-13-15 (4). OCGA § 50-13-17 (a), however, is inapplicable here, as the hearing officer panel that was created by OCGA § 31-6-44 (a) is an "agency separate and apart from the department."

Finally, the Commissioner expresses concern that, given his expertise in health planning, he should not be hamstrung in making decisions about healthcare delivery systems in Georgia by the findings of fact of a hearing officer, who does not have similar expertise. However, although the General Assembly could have included language in OCGA § 31-6-44 (k) (1) granting the Commissioner the authority to review the hearing officer's findings of fact in light of his expertise and specialized knowledge, as it did in OCGA § 50-13-15 (4), the text of OCGA § 31-6-44 indicates that

28

the General Assembly did not do so and instead created a system that requires the Commissioner to give deference to the hearing officer's findings of fact.

For the foregoing reasons, we conclude that the term "competent substantial evidence" is most reasonably understood to refer to evidence that is "relevant" such that "a reasonable mind might accept [it] as adequate to support" a finding of fact, OCGA § 31-6-44.1 (a) (5), and that is admissible. Moreover, as the foregoing indicates, this standard is a deferential one that does not permit the Commissioner to reweigh the evidence, judge the credibility of witnesses, or substitute his judgment on factual issues for that of the hearing officer based on the Commissioner's expertise.

(c) We now address the meaning of the language that the Commissioner must "state with particularity in the order" his reasons for concluding that a finding of fact of the hearing officer is "not based upon any competent substantial evidence." OCGA § 31-6-44 (k) (1).

29

To begin, we note that the phrase "state with particularity" is not defined in OCGA § 31-6-44 or elsewhere in the CON laws. We may therefore look to "dictionaries that were in use" around the time the statute was enacted in 2008. *McBrayer*, 317 Ga. at 394. Around that time, "particularity" was defined as "attentiveness to detail: exactness," Merriam-Webster's Collegiate Dictionary (11th ed. 2003). It was also defined as "[t]he quality or state of being particular rather than general"; "[e]xactitude of detail"; and "[a]ttention to or concern with detail." The American Heritage Dictionary of the English Language (1992). This understanding of "particularity" is also reflected in decisional law around the time OCGA § 31-6-44 (k) (1) was enacted. For example, Georgia courts have said that the requirement of OCGA § 9-11-9 (b) that fraud be pled with "particularity" means that "a general allegation of fraud amounts to nothing" and that "it is necessary that the complainant show, by specifications, wherein the fraud consists." *Fairfax v. Wells Fargo Bank, N.A.*, 312 Ga. App. 171, 172 (718 SE2d 16) (2011) (cleaned up) (holding that the plaintiff failed to satisfy the

30

particularity requirement of OCGA § 9-11-9 (b) by failing to make "specific factual allegations" to support her fraud claim); *Dockens v. Runkle Consulting*, 285 Ga. App. 896, 900 (648 SE2d 80) (2007) (setting forth same requirements for pleading fraud with particularity and holding that purchaser of property failed to meet those requirements by failing to allege specific facts in her complaint that an engineer intentionally made false statements).

Given these meanings of the term "particularity" and given the context in which the "particularity" requirement appears — the hearing officer conducting a de novo evidentiary hearing independent of the Department, and the Commissioner given limited ability to overturn the officer's findings of fact — we conclude that the most reasonable understanding of the "particularity" requirement is that the Commissioner must provide sufficient detail in his order from which a reviewing court can determine whether the Commissioner has or has not improperly substituted his judgment for the findings of fact of the hearing officer. See *T-Mobile South v. City of Roswell, Ga.*, 574 U.S. 293, 301 (135 SCt 808, 190

31

LE2d 679) (2015) (holding that the substantial evidence standard of review requires a local government to provide reasons for denying an application to build a cell tower that are sufficient to enable a reviewing court to carry out its duty of judicial review); *Johnson v. State*, 300 Ga. 252, 258 (794 SE2d 60) (2016) (explaining that findings of fact required on a defendant's claim of the denial of his constitutional right to a speedy trial should be consistent with the framework of such a claim and sufficient to provide a basis for appellate review of the issue), overruled on other grounds by *Johnson v. State*, 315 Ga. 876 (885 SE2d 725) (2023); *Brogdon v. Brogdon*, 290 Ga. 618, 625 (723 SE2d 421) (2012) (holding that required statutory findings on deviation of child support must be sufficient so that "we know that the court considered the correct factors in exercising its discretion").

3. Because the Court of Appeals' conclusions regarding the Commissioner's "competent substantial evidence" standard of review under OCGA § 31-6-44 (k) (1) do not comport with the discussion above and because the Court of Appeals should

32

undertake in the first instance to determine whether the Commissioner complied with the "particularity" requirement of OCGA § 31-6-44 (k) (1) as defined above, we vacate its judgments and remand the case to that Court for proceedings consistent with this opinion.

*Judgments vacated and case remanded with direction. All the Justices concur.*

Decided February 20, 2024.

Certiorari to the Court of Appeals of Georgia — 365 Ga. App. 778.

*Alston & Bird, Keith R. Blackwell, William J. Repko III; Ray & Gregory, John W. Ray, Jr., Charles L. Gregory; Parker Hudson Rainer & Dobbs, Armando L. Basarrate II, David B. Darden, Jameson B. Bilsborrow*, for appellants.

*Christopher M. Carr, Attorney General, Margaret K. Eckrote, Deputy Attorney General, Jeffrey W. Stump, Charles Thimmesch, Daniel S. Walsh, Senior Assistant Attorneys General, Andrew B. McClintock, Assistant Attorney General; Holland & Knight, Robert S. Highsmith, Jr., A. André Hendrick, Talis C. Trevino, Laurie W. Trompeter; Baker & Hostetler, Robert M. Rozier, Dorothy H. Cornwell*, for appellees.